**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF PUERTO RICO**

**LORENZO FERNÁNDEZ PÉREZ,**

**Plaintiff,**

**v.**                                                     **CIVIL NO. 15-3081 (GAG)**

**UBS FINANCIAL SERVICES INC; UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO; UBS TRUST COMPANY OF PUERTO RICO; FEDERICO LÓPEZ VILLAFAÑE,**

**Defendants.**

## OPINION AND ORDER

Lorenzo Fernández Pérez ("Plaintiff") filed suit against UBS Financial Services, Inc. of Puerto Rico ("UBS PR"), UBS Financial Services, Inc. ("UBS FS") and UBS Trust Co. of Puerto Rico, and Federico Lopez Villafañe (collectively "Defendants") alleging violations of Sections 10(b), 20(a) Securities Exchange Act of 1934, the Puerto Rico Securities Act, P.R. LAWS ANN. tit. 10, § 890. (Docket No. 15.) According to Plaintiffs, Defendants engaged in securities fraud, false statements, breach of contract, breach of fiduciary duty, unsuitable and unauthorized trading, churning and negligence, along with other claims in law and in equity. Id.

Namely, Plaintiff posits Defendants engaged in a deceptive scheme to subvert and unsettle the value of the funds in the marketplace by manipulating the market for certain Puerto Rico closed-end funds ("CEFs" or "Funds"). (See Docket No. 15.) Specifically, UBS PR was the underwriter and/or co-manager of twenty-three CEFs, and was the "only" or "dominant" secondary market dealer or liquidity provider for the Funds. UBS PR marketed and sold the investments to Puerto Rican investors such as Plaintiff (Docket No. 15 ¶ 27), and ultimately perpetrated a scheme

**Civil No. 15-3081 (GAG)**

to "use the CEF inventory account to purchase any excess supply of shares for which UBS PR could not find customers, thus creating the false illusion of a viable market."  <u>Id.</u> ¶ 37.

### I.    Relevant Factual Background

   Plaintiff is sixty-nine year old retired Veteran and resident of San Juan, Puerto Rico. (Docket No. 15 ¶ 13.)  Plaintiff became a client of UBS (then doing business as Paine Webber) before 1990.  (Docket No. 15-1 at 9.)  The account was managed by Paine Webber and eventually UBS PR.  <u>Id.</u>   He invested in several of UBS PR'S twenty-three CEFs.  <u>Id.</u> ¶ 26.  Since opening his first brokerage account with UBS, Plaintiff executed several agreements with UBS containing mandatory arbitration provisions.  The first agreement signed in 1996, provided as follows:

> I AGREE . . . THAT ANY AND ALL CONTROVERSIES WHICH MAY ARISE BETWEEN ME AND PAINE WEBBER CONCERNING ANY ACCOUNT, TRANSACTION, DISPUTE OR THE CONSTRUCTION, PERFORMANCE, OR BREACH OF THIS OR ANY OTHER AGREEMENT. . . SHALL BE DETERMINED BY ARBITRATION.

(Docket No. 19-1 at 3).  In 2008, Plaintiff executed a "Client Relationship Agreement" (hereinafter "the agreement") with UBS that would govern his accounts and client relationship with UBS. (Docket No. 19-1 at 18.)  On January 24, 2008, Plaintiff signed the agreement, thus, agreeing to the terms and conditions set forth therein.  <u>Id.</u> at 12.  Said agreement contained an arbitration clause that provided as follows:

> *U. Arbitration:*  You agree . . . that *any controversy, claim or issue in any controversy, which may arise* between you and UBS Financial Services Inc., or you and UBS International Inc. or you and UBS Financial Services Incorporated of Puerto Rico, *that occurred prior, on or subsequent to the execution of this Agreement, including but not limited to, any controversy, claim or issue in any controversy concerning any account(s), transaction, dispute or the construction, performance or breach of this Agreement or any other agreement* (whether entered into prior, on or subsequent to the date hereof) shall be determined by arbitration.

**Civil No. 15-3081 (GAG)**

(Docket No. 19-1 at 18) (emphasis added).  That same agreement also contained a change-in-terms

provision (Paragraph "S" of the UBS Client Relationship Agreement) reads as follows:

> *S. Entire Agreement and Changes to the* Agreement:  The provisions of this Client Relationship Agreement and the documents incorporated here by reference, including the agreements Terms and Conditions set forth in the New Account booklet constitute, and are intended to constitute, the entire Agreement between You & Us with respect to your Account(s). They supersede any prior agreements relating to your Account(s). We will not undertake any obligations or incur any duties or obligations other than those expressly provided for in this Agreement, the documents incorporated here by reference, or statute and government regulation.

> Upon written notice to you, we may change our Agreement with you at any time and may cease to offer any or all services.  Any such change becomes effective on the date of the notice unless the notice specifies a later date. However, you remain liable for any outstanding debits and/or charges to your Account. Your continued use of our products and Services under the new Agreement constitutes acceptance of any change. All other changes to the Agreement will become effective only if offered in writing and signed by us.

(Docket No. 19-1 at 17-18.)   The agreement also contained a choice-of-law clause, Paragraph "T"

of the UBS Client Relationship Agreement, providing, in relevant part, the following:

> *T. Applicable* Law:   This Agreement, including the Arbitration provisions in the next paragraph, its enforcement and the relationship between you and us will be governed by the law of the State of New York., without giving effect to the choice of law or conflict of laws provisions thereof. The Agreement is binding on you provided that there is no inconsistency with the Federal securities laws or the Federal or State banking laws. In connection with any Card issued, the respective Cardholder Agreement shall be governed by Federal law and the law designated by the Card Issuer in that Cardholder Agreement.

> In the event that any of the Arbitration provisions below are found to be unenforceable, you agree that we will, for purposes of determining all matters with regard to the Agreement, submit to the exclusive jurisdiction of the courts of the State of New York and the Federal courts sitting in the Southern District of New York. You also consent to service of process by certified mail to your Account's address of record and waive any forum non-conveniens and venue claims. You agree with us that if any term, covenant, condition, or provision of the Agreement is held to be invalid, void, or unenforceable, the remainder of the provisions will remain in full force and will be construed, to the maximum extent possible, in such a way as to give effect to the intent of any provision that has been called into question.

(Docket No. 19-1 at 18.)

**Civil No. 15-3081 (GAG)**

On December 15, 2015, Plaintiff filed the instant action against Robert Mulholland, President and CEO of UBS Delaware and Thomas Troy, Head of Capital Markets and Sales for Wealth Management Americas group at UBS FS.  (Docket No. 1.)  Defendants Mulholland and Troy responded by moving the Court to compel arbitration of Plaintiff's claims, pursuant to sections 3 and 4 of the FAA.  (Docket No. 7.)  Shortly thereafter, Plaintiff informed the Court that he had agreed to amend the complaint to substitute the named defendants and dismiss the claims against Mulholland and Troy.[1]  (Docket No. 13.)  Plaintiff filed his amended complaint on February 12, 2016 against UBS PR, UBS FS, UBS Trust, and López Villafañe.  (Docket No. 15.)  Subsequently, Defendants moved to compel arbitration of Plaintiff's claims against Defendants UBS FS, UBS PR and Lpez Villafañe, pursuant to Sections 3 and 4 of the Federal Arbitration Act, further arguing that all remaining claims should be stayed pending the outcome of arbitration.  (Docket No. 19.)   Pending before the Court is Defendant's Motion to Compel Arbitration.

After reviewing the applicable law and the parties' submissions the Court hereby **GRANTS** Defendant's Motion to Compel Arbitration at Docket No. 19.

## II.    Standard of review

A party seeking to compel arbitration under the FAA must demonstrate "[1] that a valid agreement to arbitrate exists, [2] that the movant is entitled to invoke the arbitration clause, [3] that the other party is bound by that clause, and that [4] the claim asserted comes within the clause's scope."  Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 375 (1st Cir. 2011) (quoting InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003)).

Section two of the Federal Arbitration Act provides that:

---

[1] Partial judgment was entered dismissing Plaintiff's claims against the original defendants on February 16, 2016.  (Docket No. 18.)

4

**Civil No. 15-3081 (GAG)**

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.   Moreover, section three allows for the staying of proceedings in the federal forum. "[W]ith regards to a claim which according to an arbitration agreement should be referred to arbitration, the Court must, upon request to that effect by one of the parties, stay the action until arbitration has concluded." Sanchez-Santiago v. Guess, Inc., 512 F.Supp.2d 75, 78 (D.P.R. 2007); see also 9 U.S.C. § 3.

Section four of the FAA allows for "a party aggrieved by the failure of another party "to arbitrate under a written agreement for arbitration" may petition a federal court 'for an order directing that such arbitration proceed in the manner provided for in such agreement.' The Court shall order arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 68 (2010)(internal quotations omitted).  Federal policy strongly favors arbitration over litigation, so long as an agreement to arbitrate exists in the first place.  See HIM Portland, LLC v. DeVito Builders, Inc., 317 F.3d 41, 43 (1st Cir. 2003).  Thus, "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986) (citation omitted);  Mun'y of San Juan v. Corp. Para El Fomento Econ. De La Ciudad Capital, 415 F.3d 145, 149 (1st Cir. 2005).  "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).

5

Civil No. 15-3081 (GAG)

### III.    Discussion

Defendants request the Court compel arbitration of Plaintiff's claims against them under Sections 3 and 4 of the Federal Arbitration Act and that all remaining claims should be stayed pending the outcome of arbitration.   (Docket No. 19.)   Defendants posit that pursuant to applicable law, Plaintiff's claims against UBS FS, UBS PR and López Villafane shall be submitted to arbitration.  (Docket No. 19.)  Moreover, according to Defendants, the inclusion of UBS Trust in this action – which is not alleged to have played any direct role in any of the alleged conduct giving rise to his claims – appears intended only to create some hook upon which to hang an argument that the arbitration clause to which Plaintiff agreed should not apply. As noted below, these efforts are unsupported by the law, and arbitration must be compelled as to UBS FS, UBS PR and López Villafañe, and the claims against UBS Trust should be stayed.  (Docket No. 19 at 3.)

Defendants raise the following arguments in support of arbitration: 1) Plaintiff's "Client Relationship Agreement" with UBS Requires Arbitration of all disputes and Is enforceable under the FAA considering that the arbitration provisions are broad and fully enforceable; 2) Plaintiff's argument that the alleged breach of contract renders ineffective the agreements between the parties is plainly erroneous; 3) and lastly, because all of Plaintiffs' claims against UBS PR, UBS FS, and López Villafañe are subject to mandatory arbitration, the Court should compel arbitration.  Id.

Further Defendants argue that Section 2 of the FAA states that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.   As such, Defendants contend that the arbitration clauses between UBS and Plaintiff are governed by the FAA considering that they are in writing and involve commerce.  Id.  The Court agrees.  The

**Civil No. 15-3081 (GAG)**

1  application of the FAA is not at issue.  Here, the arbitration clause between UBS and Plaintiff are

2  in writing and involve commerce. As such, they are within the scope and thus are governed by the

3  FAA. See  Dialysis Access, 638 F.3d at 379 (claims brought that are subject to an arbitration

4  clause are governed by the FAA);  Protane Gas Co. of P.R. v. Sony Consumer Prods. Co., 613 F.

5  Supp. 215, 217 (D.P.R. 1985) ("It is thus settled that the issue of arbitrability is a question of

6  substantive federal law and that federal law in terms of the Arbitration Act governs the issue in

7  either the state or the federal court.").

8           Furthermore, Defendants argue that the arbitration provisions at issue are broad and include

9  all disputes arising from or relating to the relationship between the parties.  Id.  Plaintiff's

10  Amended Complaint unquestionably raises "claim[s]" and "issue[s]" relating to "transaction[s]"

11  between him and UBS.  (Docket No. 19 at 11.)  Additionally, Defendants argue that even if there

12  were any ambiguity, it should be resolved in favor of arbitration. See AT&T Tech., Inc, 475 U.S.

13  at 650 (FAA creates the presumption that a contractual arbitration clause must be enforced unless

14  "it may be said with positive assurance that the arbitration clause is not susceptible of an

15  interpretation that covers the asserted dispute."); see also Grand Wireless, Inc. v. Verizon

16  Wireless, Inc., 748 F.3d 1, 7 (1st Cir. 2014) ("At a minimum, this policy requires that 'ambiguities

17  as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration.'").

18           Plaintiff responded, opposing Defendants' request to compel arbitration, arguing the

19  arbitration agreement executed between the parties is not valid.  (Docket No. 15 ¶ 72.)  In essence,

20  he contends that the change-in-terms provision renders the contract illusory and the agreement fails

21  for lack of consideration.  Because the change-in-terms provisions vested UBS with the authority

22  to unilaterally amend the arbitration agreement, Plaintiff argues UBS has no binding obligation to

23  arbitrate, and thus, the agreement "lacks mutuality, because the it authorizes UBS to amend the

24  entire agreement –including the mandatory arbitration clause, at any time and at its sole and

**Civil No. 15-3081 (GAG)**

1  absolute discretion, the arbitrate clause is illusory and lacks consideration." (Docket No. 26 at 7.)

2  Despite the above, Plaintiff posits his challenge is directed at the validity of the arbitration

3  agreement, not the contract as a whole.  According to Plaintiff, "[t]he crucial dispute is whether the

4  arbitration clause contained in the Agreement executed with UBS is void for lack of bi-lateral

5  consideration." (Docket No. 26 at 7.)

6        Plaintiff contends that because UBS could amend the agreement to alter or remove the

7  arbitration agreement, "[n]othing bound UBS to continue its agreement, or even to maintain the

8  same terms." (Docket No. 26 at 7.)  For this reason, Plaintiff posits the arbitration agreement lacks

9  consideration given that the change-in-terms clause gives UBS "a unilateral right to seek redress

10  against Fernandez in a judicial forum in the event of a breach by Fernandez.   In other words,

11  UBS' reservation of the right to unilaterally change or eliminate the terms of the arbitration

12  agreement, without any waiting period on the notice to Fernandez, at its whim, leaves the

13  fulfillment of the duty to arbitrate to one of the parties[.]" Id. at 8.   Plaintiff argues the arbitration

14  agreement is void for both procedural and substantive unconscionability.  (Docket No. 26 at 12.)

15  Plaintiff's complaint does not allege any action by Defendants under the change-in-terms clause.

16  In other words, Plaintiff challenges the mere possibility of Defendants invoking the change-in-

17  terms clause and the potential implications on the agreements to arbitrate.

18        Defendants replied arguing: 1)  that a challenge to the validity of the contract as a whole is

19  an issue for the arbitrator to decide, not the Court; 2) Choice-of-law provisions are valid under PR

20  law and that the agreement contains a valid choice-of-law clause, New York law governs the

21  parties' agreement; 3) Plaintiff's illusoriness challenge is meritless; 4) Plaintiff's agreement to

22  arbitrate is not illusory; 5)  Plaintiff's contention that the twenty year old contract failed at its

23  inception for lack of consideration should be rejected; and 6)  Plaintiff cannot simultaneously sue

24  for breach of contract and disclaim that same contract. (Docket No. 29.)

8

Civil No. 15-3081 (GAG)

Plaintiff sur-replied.   As to the issue regarding the applicable law, Plaintiff argues the choice-of-law provision is invalid pursuant to Puerto Rico law. (Docket No. 34.)  Plaintiff points to Puerto Rico Supreme Court case Walborg.  According to Plaintiff, under the Walborg analysis, the Court must first determine whether the contract between Defendants and Plaintiff has substantial connection to New York, and that there substantial requirement is not met.   "The only connection between the Plaintiff –UBS Agreement and New York is that New York is the state of UBS FS' incorporation.   Therefore, Fernandez further asserts that this connection alone is not substantial enough to satisfy the first prong of the Walborg test."  (Docket No. 34.)   Moreover, Plaintiff reiterates he is not challenging the validity of the entire contract; instead he is challenging the fact that the arbitration clause can be amended at any time and without proper notice."  (Docket No. 34 at 5.)

A.  Choice-of-Law Clause

As a threshold matter, the Court addresses the parties' arguments as to the applicable law governing the agreement.  Plaintiff challenges the validity of the arbitration clause under Puerto Rico law.  He argues the clause is void because it lacks consideration.  (Docket No. 26 at 11.)   In turn, Defendants argue that New York law governs the agreement, thus, Plaintiff's arguments against compelling arbitration are meritless because they are not supported by the applicable law, among other reasons.  (Docket No. 29.)

The agreement between Plaintiff and UBS provides that "[t]his Agreement, including the Arbitration provisions in the next paragraph, its enforcement and the relationship between you and us will be governed by the law of the State of New York., without giving effect to the choice of law or conflict of laws provisions thereof."  (Docket No. 19-1 at 18.)

The determination of whether a contract exists between the parties is governed by state law. "The construction of arbitration agreements under the FAA 'must be resolved according to federal

**Civil No. 15-3081 (GAG)**

law,' and 'is ordinarily a function of the parties' intent as expressed in the language of the contract

documents' Relevant state law, particularly which was selected in a valid choice-of-law clause,

informs this analysis." Barros v. UBS Trust Co. of P.R., 915 F. Supp. 2d 226, 230 (D.P.R. 2012)

(quoting McCarthy v. Azure, 22 F.3d 351, 355 (1st Cir. 1994)).   The agreement selects New York

law to govern the dispute.

 Plaintiff counters arguing that the choice-of-law provision signed between the parties is

invalid under Puerto Rico law.  According to Plaintiff, the Puerto Rico Supreme Court in Walborg,

104 P.R. Dec 184, 192 (P.R. 1975), established the governing principle for choice-of-law

provisions.  He argues there are "generally valid provided the chosen jurisdiction has a substantial

connection to the contract unless the provision is contrary to fundamental public policy

considerations."  (Docket No. 34 at 2.)   Plaintiff's interpretation of Puerto Rico Supreme Court

precedent is incorrect.  In Walborg the court stated:

> The problem of the effect of the agreement of the parties on the applicable law,
> assuming for the sake of argument its separation from the problem raised by the
> arbitration clause, remains to be decided. The clauses in which the law is selected
> are usually considered valid when the jurisdiction selected has substantial
> connection with the contract. . . . Said clauses are ineffective, nevertheless, when
> they collide against fundamental considerations of public policy of the forum.

104 P.R. Dec at 192.   However, Plaintiff's stance leaves out the rest of analysis.  In Unisys P.R.,

Inc. v. Ramallo Bros. Printing, 128 P.R. Dec. 842 (P.R. 1991) the Puerto Rico Supreme Court

found a solution to the issues that Walborg left unsolved, guiding its analysis to United States

precedent.

> [T]he current federal doctrine favors [choice-of-law] clauses. They have been
> deemed valid and reasonable unless otherwise established. The opposing party has
> the burden of proving the clause's inapplicability.
>
> Under federal common law, forum-selection clauses "are prima facie valid and
> should be enforced unless enforcement is shown by the resisting party to be
> 'unreasonable' under the circumstances. . . . The party resisting enforcement of the
> clause bears a heavy burden of proof to show unreasonableness.

**Civil No. 15-3081 (GAG)**

<u>Unisys</u>, 128 P.R. Dec. at 855 (quoting <u>Kline v. Kawai Am. Corp.</u>, 498 F. Supp. 868, 871 (D.Minn.

1980) (internal quotations and citations omitted)).

> A series of guidelines have been established through case law for determining
> nonapplicability of the forum selection clause. Among them, we find:
>
> 1) that the forum chosen is unreasonable and unjust; or 2) that hearing the case in
> said forum would constitute a clear and patent inequity or would be unreasonable or
> unjust; or 3) that the clause is invalid because it was negotiated under fraud or
> deceit; or 4) that enforcement of said clause would defeat the State's public policy.

<u>Id.</u> Plaintiff  has shown no proof of unreasonableness to render the clause inapplicable under

<u>Unisys</u>.   As such the Court finds that the choice-of-law clause of the agreement is valid under the

applicable precedent.   Therefore, New York law governs the agreement between the parties.

"State law may be applied [to arbitration agreements] 'if that law arose to govern issues

concerning the validity, revocability, and enforceability of contracts generally.'"   <u>Dean Witter</u>

<u>Reynolds, Inc. v. Sanchez Espada</u>, 959 F. Supp. 73, 80 (D.P.R. 1997) (quoting <u>Doctor's Assocs,</u>

<u>Inc. v. Casarotto</u>, 517 U.S. 681, 685 (1996).  Given that the parties have selected New York law in

the agreement, the Court will rely on New York contract law to interpret the agreement.  <u>See</u> <u>also</u>

<u>Paine Webber, Inc. v. Elahi</u>, 87 F.3d 589, 593 (1st Cir. 1996).

### B.  The Agreement to Arbitrate

"A party who attempts to compel arbitration must show that [1] a valid agreement to

arbitrate exists, [2] that the movant is entitled to invoke the arbitration clause, [3] that the other

party is bound by that clause, and that [4] the claim asserted comes within the clause's scope."

<u>InterGen N.V.</u>, 344 F.3d at 142.  A court must first look to a valid contract to determine if it

contains an arbitration clause.  Once such a clause is found to exist the court must then determine

whether the dispute arising under the contract falls within the scope of the arbitration clause.

<u>Cardona Tirado v. Shearson Lehman Am. Express, Inc.</u>, 634 F. Supp. 158, 159 (D.P.R. 1986).  If a

**Civil No. 15-3081 (GAG)**

valid clause is found, and the controversy in fact falls under the scope of the clause, the court will

direct the parties to proceed to arbitration unless the party compelling arbitration has waived the

right to do so, or there exist grounds for revocation of the contractual agreement.  See  Combined

Energies v. CCI Inc., 514 F.3d 168, 171 (1st Cir. 2008);  Bangor Hydro-Elec. Co. v. New Eng. Tel.

& Tel. Co., 62 F. Supp. 2d 152, 155-56 (D.Me. 1999).  See also 9 U.S.C. § 2.     The    arbitration

provision in the agreement states as follows.

> *U. Arbitration:*  You agree . . . that *any controversy, claim or issue in any*
> *controversy, which may arise* between you and UBS Financial Services Inc., or you
> and UBS International Inc. or you and UBS Financial Services Incorporated of
> Puerto Rico, *that occurred prior, on or subsequent to the execution of this*
> *Agreement, including but not limited to, any controversy, claim or issue in any*
> *controversy concerning any account(s), transaction, dispute or the construction,*
> *performance or breach of this Agreement or any other agreement* (whether entered
> into prior, on or subsequent to the date hereof) shall be determined by arbitration.

(Docket No. 19-1 at 18) (emphasis added).  Here, it is uncontested that the dispute arising under

the contract falls within the scope of the arbitration.   The controversy surrounds Plaintiff's

challenge to the validity of the agreement to arbitrate.

The FAA establishes a strong "national policy favoring arbitration. The Supreme Court has

consistently favored arbitration when facing an issue concerning the arbitrability of a dispute.

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25.  "[A]s a matter of

federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of

arbitration, whether the problem at hand is the construction of the contract language itself or an

allegation of waiver, delay, or a like defense to arbitrability."  Id.

> [W]here the court is persuaded that "the parties' *arbitration agreement* was validly
> formed and that it cover[s] the dispute in question and [is] legally enforceable," and
> that the arbitration agreement is not otherwise subject to revocation "upon such
> grounds as exist at law or in equity for the revocation of any contract," section 2 of
> the FAA requires that the court submit the dispute in question to arbitration.

**Civil No. 15-3081 (GAG)**

Dialysis Access, 638 F.3d at 376 (quoting Granite Rock v. Int'l Brotherhood of Teamsters, 561 U.S. 287, 300 (2010)) (emphasis added).  As a general rule, "[w]hether or not a dispute is arbitrable is typically a question for judicial determination."  Dialysis Access, 638 F.3d at 375 (citing Granite Rock, 561 U.S. at 300); Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002)).  However, the adjudication of the validity of the arbitration agreement is contingent upon the type of challenge the parties raise.

By way of a series of cases, the United States Supreme Court has outlined the framework for district courts to determine whether validity challenges to arbitration agreements go to the court or the arbitrator.  Rent-A-Ctr., 561 U.S. 63;  Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 449 (2006); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967).

> Under section 4, with respect to a matter within the jurisdiction of the federal courts save for the existence of an arbitration clause, the federal court is instructed to order arbitration to proceed once it is satisfied that the making of the agreement for arbitration or the failure to comply (with the arbitration agreement) is not in issue. Accordingly, if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it.  But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.

Prima Paint Corp., 388 U.S. at 403–04 (internal quotations omitted).  Most recently in, Rent-A-Ctr., the Court discussed the differences between the challenges actionable under Section 2 of the FAA.   A challenge to the validity of the arbitration agreement *per se* must be determined by the Court before compelling arbitration.  "If a party challenges the validity under [section] 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under [section] 4."  Rent-A-Ctr., 561 U.S. at 71.   "In Prima Paint, for example, if the claim had been 'fraud in the inducement of the arbitration clause itself,' then the court would have considered it."  Rent-A-Ctr., 561 U.S. at 71 (quoting Prima Paint Corp., 388 U.S. at 403-04).

Civil No. 15-3081 (GAG)

On the other hand, a challenge to the contract as a whole or a provision "either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid" is for the arbitrator to decide whether the arbitration agreement at issue is enforceable. Rent-A-Ctr., 561 U.S. at 70 (citations omitted); see also Buckeye, 546 U.S. at 449 (recognizing that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."). "The reasoning behind this is that section 2 states that a written provision to settle by arbitration a controversy is valid, irrevocable, and enforceable *without mention* of the validity of the contract in which it is contained." Rent-A-Ctr., 561 U.S. at 70. Thus, "a challenge to another provision, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." Rent-A-Ctr., 561 U.S. at 70 (internal quotation marks omitted); see also Solymar Invs. v. Banco Santander, 672 F.3d 981, 990 (11th Cir. 2012) (recognizing that under section 4 of the FAA, "arbitration of a dispute should only be ordered where 'the court is satisfied that neither the formation of the parties' arbitration agreement *nor . . .* its enforceability or applicability to the dispute is in issue. Where a party contests either or both matters, the court must resolve the disagreement.'") (quoting Granite Rock, 561 U.S. at 300.). Thus, when the validity of the entire contract is challenged the arbitration clause becomes *severable* from the remained of the contract and is enforced. "[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract.'" Rent-A-Ctr., 561 U.S. at 71 (quoting Prima Paint Corp., 388 U.S. at 403-04).

> To immunize an arbitration agreement from judicial challenge on the ground of fraud in the inducement would be to elevate it over other forms of contract," In some cases the claimed basis of invalidity for the contract as a whole will be much easier to establish than the same basis as applied only to the severable agreement to arbitrate. Thus, in an employment contract many elements of alleged unconscionability applicable to the entire contract (outrageously low wages, for example) would not affect the agreement to arbitrate alone. But even where that is

14

**Civil No. 15-3081 (GAG)**

not the case—as in *Prima Paint* itself, where the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract—we nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene.

Rent-A-Ctr., 561 U.S. at 71 (quoting Prima Paint Corp., 388 U.S. at 403-04); see also Dialysis Access, 638 F.3d at 376.

In sum, determining the arbitrability of any contract containing an arbitration clause involves a two-step process: 1) resolution of any formation challenge to the contract containing the arbitration clause, in keeping with Granite Rock; and 2) determination of whether any subsequent challenges are to the entire agreement, or to the arbitration clause specifically, in keeping with Prima Paint.  Id.  In view of the parties' arguments, the Court need only delve into step two.  "As established in Prima Paint, the second inquiry hinges upon whether the challenge raised is to the arbitration clause specifically, or to the contract in which the arbitration clause is found generally." Solymar Invs., 672 F.3d at 998 (citing Prima Paint, 388 U.S. at 403–04).

From the outset, Plaintiff has contested arbitration.  Plaintiff's alleges arbitration is not proper, arguing, in relevant part:

> In the present case, the arbitration agreement executed by the parties is not valid. In alternative, assuming arguendo that Plaintiff's contract with UBS PR provides for a valid arbitration, it is affrmatively alleged that none of these claims are subject to arbitration because Defendants and UBS PR failed to perform with their own obligations towards Plaintiff. In the present case the legal maxim and principle of law universally admitted, *exceptio non adimpleti contractus*, applies. Accordingly, Plaintiff needs not submit his claims to arbitration.

(Docket No. 15 ¶ 72.)    As discussed above, Plaintiff refutes that his claims are subject to mandatory arbitration because he contends the agreement's change-in-terms provision renders the contract illusory and the agreement fails for lack of consideration.  (Docket No. 26 at 7.)  "[T]he Court should find that the consideration underlying the arbitration agreement between Fernandez and UBS is insufficient to support the enforcement of an arbitration provision which is, unilaterally

15

**Civil No. 15-3081 (GAG)**

binding." (Docket No. 26 at 11.)   Yet, Plaintiff argues he is only challenging the validity of the

arbitration agreement, not the contract as a whole.   According to Plaintiff, "[t]he crucial dispute is

whether the arbitration clause contained in the Agreement executed with UBS is void for lack of

bi-lateral consideration." (Docket No. 26 at 7.)   The Court is not convinced by Plaintiff's

reasoning.

Plaintiff posits that because the change-in-terms provision vested UBS with the authority to

unilaterally amend the arbitration agreement, UBS has no binding obligation to arbitrate, and thus,

the agreement "lacks mutuality, because the it authorizes UBS to amend the entire agreement –

including the mandatory arbitration clause, at any time and at its sole and absolute discretion, the

arbitration clause is illusory and lacks consideration." (Docket No. 26 at 7.)  The change-in-terms

clause of the agreement titled "*Entire Agreement and Changes to the Agreement*" states as follows:

> Upon written notice to you, we may change our Agreement with you at any time
> and may cease to offer any or all services.  Any such change becomes effective on
> the date of the notice unless the notice specifies a later date. However, you remain
> liable for any outstanding debits and/or charges to your Account. Your continued
> use of our products and Services under the new Agreement constitutes acceptance
> of any change. All other changes to the Agreement will become effective only if
> offered in writing and signed by us.

(Docket No. 19-1 at 17-18).  Under New York law, "[w]here the document makes clear the parties'

over-all intention, courts examining isolated provisions 'should then choose that construction

which will carry out the plain purpose and object of the [agreement].'" Barros v. UBS Trust Co. of

P.R., 915 F. Supp. 2d 226, 230 (D.P.R. 2012) (quoting Kass v. Kass, 91 N.Y.2d 554, 567 (N.Y

1998)). "[P]rovisions in a contract are not ambiguous merely because the parties interpret them

differently . . . ." Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd. 88 N.Y.2d 347, 352 (N.Y.

1996).

Plaintiff contends the arbitration agreement is invalid because it is illusory. An illusory

promise, "that is, a promise merely in form, but in actuality not promising anything, . . . cannot

16

**Civil No. 15-3081 (GAG)**

1   serve as consideration." 3 Richard A. Lord, WILLISTON ON CONTRACTS § 7:7 (4th ed. 2013); see

2   also  Damato v. Time Warner Cable, Inc., No. 13-CV-994 (ARR), 2013 WL 3968765, at *5

3   (E.D.N.Y. July 31, 2013).  Plaintiff further contends that the arbitration clause is unenforceable

4   upon him because of contract defense of unconscionability.   An arbitration provision is valid

5   unless it is procedurally and substantively unconscionable.  See Rivera v. Centro Médico de

6   Turabo, 575 F.3d 10, 18 (1st Cir. 2009).

7        Plaintiff points to no concrete set of facts demonstrating any procedural or substantively

8   unconscionable acts that occurred during the formation of the contractual relationship that bound

9   Plaintiff to the arbitration agreement.   He does not plead the existence of any fraudulent statement

10  or material misrepresentation made by the Defendants that influenced his decision to enter the

11  contractual relationship.   As such, the Court finds that the record is devoid of any pleading or

12  factual allegation that could support Plaintiff's unconscionability argument.

13       While Plaintiff posits his challenged is directed at the arbitration clause of the agreement

14  and not the contract as a whole, the clear meaning of the language of the agreement reveals that

15  Plaintiff challenges the mutuality of the entire agreement, and not just the arbitration clause.  It is

16  clear that this provision allows changes to the *entire* agreement.   Nothing in the language of the

17  change-in-terms clause suggests that UBS's authority to amend or terminate the provisions

18  exclusively related to the agreement to arbitrate.   As detailed above, the provision states that

19  "[u]pon written notice to you, we may change *our agreement with you* at any time and may cease

20  to offer any or all services."  (Docket No. 19-1 at 17-18).  The Court finds the wording of this

21  clause in no way suggests exclusive application to changes to the parties' agreement to arbitrate.

22  If the intent of the parties would have been to limit these changes to the arbitration provision, they

23  should have expressly stated as such.

24

17

**Civil No. 15-3081 (GAG)**

Plaintiff's challenge to the validity of the agreement is directed to the validity of the contract as a whole, and because his claims are within the scope of the arbitration agreement, the matter must be referred for resolution to the arbitrator.  Accordingly, pursuant to the applicable Supreme Court precedent most recently reiterated in Rent-A-Center, because this argument challenges the validity of the contract as a whole, the arbitration clause is hereby severed and enforced, and the pending challenge to the contract is referred to arbitration.   "Application of the severability rule does not depend on the substance of the remainder of the contract. Section 2 operates on the specific "written provision" to "settle by arbitration a controversy" that the party seeks to enforce." Rent-A-Ctr., 561 U.S. at 72.

Based upon the assessment of the applicable law and the parties' submissions, the Court hereby **GRANTS** Defendants' Motion to Compel Arbitration.

### IV.    Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Compel arbitration at Docket No. 19.  Plaintiff's claims against Defendants UBS PR, UBS FS, and López Villafañe are dismissed.  Plaintiff's claims against UBS Trust is hereby **STAYED** while arbitration proceedings are pending.

**SO ORDERED.**

In San Juan, Puerto Rico this 29th day of September, 2016.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge
